LUTHER H. CONN, Appellant, *v.* JOSEPH T. McCOLLOUGH, Respondent.

### June 6, 1882.

1. The condition of a bonus subscription, made "in consideration of the advantages that will accrue to each of us in consequence of the rebuilding of the Southern Hotel, and for the purpose of inducing persons to take stock in the company to be organized for the purpose of rebuilding said hotel," are fulfilled when the hotel is rebuilt by an individual.

2. The consideration for the subscription was the rebuilding of the hotel, and not the formation of a corporation.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*
C. E. GIBSON, for the appellant.
RUDOLPH HIRZEL, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This suit was commenced before a justice of the peace, who gave judgment for the defendant. On appeal to the circuit court, the plaintiff, by leave, and without objection, filed an amended statement of his cause of action. This recited that in April, 1879, the Southern Hotel, in St. Louis, was consumed by fire; that, as a consequence thereof, real estate in the vicinity became greatly depreciated, and it became a matter of interest to property-holders and others, to have the hotel rebuilt; that thereupon the following paper was signed and delivered by a number of persons, including the defendant: —

"Bonus subscription to the Southern Hotel Company of St. Louis.

"We, the undersigned, in consideration of the advantages that will accrue to each of us in consequence of the rebuilding of the Southern Hotel, and for the purpose of inducing persons to take stock in the company to be organized for the purpose of rebuilding said Southern Hotel, do hereby agree and bind ourselves severally and individually to give as a bonus to David Nicholson, Erastus Wells, and Silas Bent, or to such person or persons as they may designate, the sum of money indicated by the figures herein below set opposite our names, said money to be used for the purpose herein above set forth, and to be paid by us in the following manner to wit: One-fifth in cash at the time of commencement of the work on said building, and the remaining four-fifths in four equal instalments and four promissory notes to be given therefor, dated at said time of commencing work on said building, and maturing three, six, nine, and twelve months after date, without interest.

"Signed, among others, Jos. T. McCollough, $200,00."

It is further alleged that after many unsuccessful efforts to induce various parties to rebuild the hotel, the said Nicholson, Wells, and Bent effected an arrangement with Thomas Allen, whereby said Allen bound himself to rebuild

the hotel, at an outlay of not less then $250,000, upon condition that the bonus subscriptions secured as above, which then amounted to $128,000, should be paid over to him, when collected ; that said Allen did thereupon rebuild said hotel at an expense of about $1,000,000, and the said Nicholson, Wells, and Bent authorized and empowered the plaintiff to collect the sums due on said subscriptions for the benefit of said Allen ; that the defendant has failed and refused to pay, etc. The circuit court held that no cause of action was shown in this statement, and refused to hear testimony, whereupon the plaintiff took a non-suit, with leave, etc.

The whole issue in controversy turns upon the construction of the subscription paper signed by the defendant. It is insisted by the defendant that, according to its terms, he promised to pay "for the purpose of inducing persons to take stock in the company to be organized," etc., and that he never promised to pay in aid of any individual person who might rebuild the hotel. That, therefore, the consideration and the condition of his promise have failed, and he is not bound.

If the defendant's obligation to pay is released because of the substitution of an individual, instead of a stock company, as the active agent in the work desired, then this must result from one or both of two propositions, to wit : 1. That the inducing of persons to take stock in the supposed company was the consideration, either chiefly or partly, for the defendant's promise. 2. That such inducing of persons to take stock was a condition precedent, without whose fulfilment there could be no obligation to pay. It must be noted that no stipulation or purpose is expressed, for the actual formation of a stock company. The only purpose is that of *inducing persons* to take stock in such a company, whose probable organization is assumed.

Let us first examine this purpose of inducing persons to take stock, in the aspect of a consideration for the promise.

In this capacity, it is either a consideration *per se*, or it is one by virtue of its understood tendencies and consequences. If the latter, it refers to the rebuilding of the hotel, as the ultimate object and substantial benefit which the promiser proposes to secure. So regarded, the consideration is fulfilled, since the hotel was in fact rebuilt. As a consideration *per se*, it may be tested by a simple illustration. Suppose a stock company to have been actually organized as contemplated, and that the hotel was in fact rebuilt by it. Suppose, further, that it should conclusively appear that not a single person had been induced to take stock in the company by the defendant's promise, or had ever even heard of it. Would he claim a failure of consideration on this account? Rationally, he would not. He would say, in fairness, that, although the expressed purpose of inducing persons to take stock had literally failed, yet its object was accomplished; and that therein, at a step beyond it, the real and substantial consideration, to wit, the formation of the stock company, and the building of the hotel by its means, was fulfilled. So, at all events, the courts would say for him. So, then, the purpose of inducing persons to take stock fails to do duty as a consideration *per se*. The consideration lies further along.

As a condition precedent, our subject of discussion fares no better. It is inconceivable that, when an act is done for the purpose of inducing another act, such other act can be a condition precedent to the doing of the first. A promise to do a thing, in order, by its example or results, to induce some other person to do the same, or some other thing, should be *bona fide*, positive, and unconditional. A promise may be conditioned upon another promise. But here is nothing of the sort. The promise is positive, and is firmly based upon "the advantages that will accrue to each of us in consequence of the rebuilding of the Southern Hotel," no other contingency being in sight. The money about to be promised will be, in part, the means

of securing those advantages. What follows has no practical meaning, further than a hope that one result of the promise will be the inducing of other persons to provide additional means for effecting the same ultimate object. There is no condition precedent. It thus appears that the literally expressed "purpose of inducing persons to take stock in the company," was neither the consideration of the promise made by the defendant, nor a condition precedent to performance. The defendant will answer that this proves nothing, because the inducing of persons to take stock is only the means to an end, namely, to the formation of a stock company; and that the end—not the means—constitutes the consideration of the promise. But why may we not apply this rule with equal or greater propriety to the ultimate, substantial, and beneficial end,—as to which, even the formation of a stock company is only a means of reaching it,—to wit, the rebuilding of the hotel? Here, in making the application, our reasoning is aided by the plain language of the promiser himself. He says, in so many words, that the "consideration" of his promise is found in the "advantages that will accrue to each of us in consequence of the rebuilding of the Southern Hotel." What more can we need to show that the rebuilding of the hotel was the only consideration,—that all the precedent matters were referred to only as the means whereby the consideration would probably be made effectual,—and that such means were merely supposed, purposed, or naturally expected, but were not stipulated for?

We think that upon the whole contract, there was no intention to stipulate for the organization of a stock company, or for the inducing of persons to take stock therein. The promisers intended to say, and to be so understood, that they were willing to pay the sums subscribed for the advantages which they would derive from the rebuilding of the hotel. They entrusted to the persons named a discretion as to who should receive the money, "to be used for the

purpose herein above set forth." What purpose? Surely not that of " inducing persons to take stock ; " not that of organizing a stock company, for they do not thereby propose to subscribe for any stock. The only purpose here intended is the rebuilding of the hotel. The plaintiff was designated, under the terms of the instrument, as the proper person to receive the money for the purpose intended.

The judgment must be reversed and the cause remanded. All the judges concur.